IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SABRI IBRAHIM SAMIRAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 03 C 1298 |
| | ) |
| ALBERTO GONZALES,* Attorney | ) |
| General of the United States; et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sabri Ibrahim Samirah filed a nine-count complaint on February 20, 2003, and sought an injunction requiring the government to allow him to return to the United States, after the government revoked his advance parole while he was abroad. We granted plaintiff's motion for injunctive relief and ordered the government to make the necessary arrangements for plaintiff's return. See Docket No. 15 (03-1298) (March 25, 2003). The government filed a motion to stay that order, as well as an emergency interlocutory appeal. The Seventh Circuit Court of Appeals granted the stay, and subsequently reversed the order granting injunctive relief. See Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003). Plaintiff thereafter filed a motion for a rehearing *en banc,* and after that was denied, filed a petition to the United States Supreme Court for a writ of *certiorari*, which was also denied. See 2003 U.S. App. LEXIS 22549 (7th Cir. Oct. 30, 2003); Samirah v. Ashcroft, 541 U.S. 1085 (2004).

On July 22, 2004, approximately one month and-a-half after the Supreme Court denied *certiorari*, plaintiff filed a motion to set a date for the government to respond to the remaining counts in his complaint. The government opposed that motion, and on October 14, 2004,

---

*Alberto Gonzales is substituted for his predecessor, John Ashcroft, pursuant to FED. R. CIV. P. 25(d)(1).

plaintiff filed a "response" to the government's memorandum. The reasons why this motion has lingered on the court's docket for so long are not clear, but after review, we grant it for the following reasons.

According to plaintiff, the Seventh Circuit's opinion did not address his statutory and constitutional challenges to the Attorney General's authority to prevent non-citizens from entering the United States. Plaintiff contends that the Seventh Circuit only ruled on this court's jurisdiction (or lack thereof) to order the reinstatement of advance parole. Plaintiff argues that the court's narrow ruling does not preclude us from reviewing his statutory and constitutional challenges.[1] In response, the government contends the case is over, and that the outstanding counts in plaintiff's complaint would all require the court to review its discretionary decisions, which the Seventh Circuit held to be unreviewable. Plaintiff ripostes that the remaining counts challenge the act of exclusion, and not the government's discretionary decisions concerning advance parole, and that the Seventh Circuit never actually addressed and decided the constitutional and statutory challenges.

Our task now is not to evaluate the merits of plaintiff's complaint. Rather, we must only determine whether the Seventh Circuit dismissed all counts in the complaint, effectively terminating the case, or if it reversed on a narrow ground. In case of the latter, we must also consider if the narrow ground necessarily encompasses the remaining counts in plaintiff's

---

[1] We observe that plaintiff portrayed the Seventh Circuit's ruling in different terms in his petition for *certiorari*. *See* Brief for Appellant, Petition for Writ of Certiorari, 541 U.S. 1085 (2004) (03-1085), 2004 WL 198322. Plaintiff's first question presented was: "Did the Court of Appeals err in holding that § 1252(a)(B) precludes jurisdiction over pure constitutional and statutory claims challenging the government's interpretation of 8 U.S.C. § 1225A, where no other route of appeal is possible?" *Id.* at *i; see also id.* at *6 (asserting that the Seventh Circuit held that §1252(a)(2)(B) "barred the district court from addressing any claims, including purely constitutional and statutory claims."). In his petition, plaintiff also presented the same arguments that are now before this court. *See. id.* at *7 (stating that he challenged the deprivation of due process, not the government's discretionary actions); *id.* at *14-21 (arguing that government does not possess nonreviewable discretion to disobey a federal statute and that exclusion without notice and hearing violates due process). However, a "denial of certiorari does not indicate any view on the merits" and "should not be accorded any influencing precedential value." 16B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4004.1, at 34, 37 (1996).

complaint.

The Seventh Circuit focused on our review of the government's decision to revoke plaintiff's advance parole, and framed the issue as to "whether federal courts have subject matter jurisdiction to review discretionary decisions of the Attorney General, such as the decision to revoke parole." Samirah, 335 F.3d at 548. In ruling that 8 U.S.C. § 1252(a)(2)(B)(ii) compelled a negative answer, even when the decision is not made in the context of the removal proceeding, the court's analysis was limited to the government's discretionary decision to revoke parole. The remainder of the opinion was dedicated to plaintiff's assertion of habeas jurisdiction under 28 U.S.C. § 2241. Pointing to the court's concluding observation that "Section 1252(a)(2)(B)(ii) bars jurisdiction over of [sic] the rest of Samirah's action" (*id.* at 552), the government contends that the jurisdictional bar extends to the remaining counts, which it asserts require review of the decision to prohibit plaintiff from returning to the United States (govt. mem. at 2).

Supporting the government's interpretation of "the rest of Samirah's action" is the decision to reverse and not to remand for further consideration of the constitutional and statutory challenges. Plaintiff briefed these challenges to the Seventh Circuit, and argued, *inter alia*, that the government's revocation of parole at a pre-inspection station exceeded the authority established by Congress, that due process required that he be afforded a hearing, and that federal jurisdiction existed under the Administrative Procedure Act and Mandamus (Brief for Appellee at 13-17, 24-25, 37-42, Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003) (No. 03-1786)). We cannot overlook that the court did not discuss these issues and instead focused almost exclusively on the discretionary revocation of plaintiff's advance parole and his petition for habeas relief. Only passing reference was made to plaintiff's constitutional and statutory claims. *See* Samirah, 335 F.3d at 547 (noting that plaintiff sought injunctive relief

"among other things," and sought jurisdiction under the Constitution and "various federal statutes"). The court did not observe that the lack of removal proceedings offended due process or contravened the INA. Nor did it state that the constitutional and statutory claims challenged the government's discretionary decisions, which § 1252(a)(2)(B) insulates from judicial review. Therefore, we do not interpret "the rest of Samirah's action" to encompass the constitutional and statutory challenges.

The remaining counts in the complaint also appear to address issues distinct from the government's discretionary decision to revoke plaintiff's advance parole. The REAL ID Act of 2005 (Pub. L. No. 109-13, 119 Stat. 231 (2005)), recently confirmed that § 1252(a)(2)(B) only bars review of discretionary decisions, and does not strip federal courts of jurisdiction to review "constitutional claims or questions of law."[2] *See also* Vasile v. Gonzales, 417 F.3d 766, 768 (7th Cir. 2005); Hamdan v. Gonzales, 425 F.3d 1051, 1057 (7th Cir. 2005); Hernandez-Alvarez v. Gonzalez, 432 F.3d 763, 765 (7th Cir. 2005); Ramos v. Gonzales, 414 F.3d 800, 802, 804 (7th Cir. 2005). We reference the REAL ID Act not because it controls, because the contrary seems true, as the newly added subsection (D) specifies that constitutional claims and questions of law are to be raised in a "petition for review filed with an appropriate court of appeals in accordance with this section." Rather, we mention the Act to emphasize that constitutional and statutory claims are distinct from discretionary decisions, and that we should not conclude that every government decision is discretionary and thus immune from review without inquiry into the nature of the government's decision.[3]

---

[2] The REAL ID Act adds to 1252(a)(2) a new subsection (D), which provides:
Judicial review of certain legal claims.--Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

[3] We also note that courts reviewed constitutional and statutory challenges to immigration proceedings prior to the REAL ID Act's effective date. *See, e.g.,* Morales-Morales v. Ashcroft, 384 F.3d 418,

According to the government, plaintiff's entire case fails "without judicial review over the revocation of advance parole" (govt. mem. at 3). We disagree. The remaining constitutional and statutory challenges do not focus on the decision to revoke plaintiff's advance parole, but instead on the government's exclusion of plaintiff without providing a hearing and in alleged contravention of the Immigration and Nationality Act and the APA (*compare* plf. cplt. Count I with Count II, and Count III with Count IV). In Count II plaintiff alleges that the government did not apply the exclusive statutory scheme that Congress provided for removing or excluding aliens (*id.* at ¶ 36). Similarly, plaintiff alleges that he had a liberty interest in returning to the United States, which entitled him to certain procedures prior to exclusion (*id.* at ¶¶ 50, 64). Plaintiff does not request review of any factual determination made during a hearing, unlike the plaintiff in Vasile, 417 F.3d at 768. Rather, he asks for a hearing.

Considering the remaining counts in the complaint does not entail review of the parole revocation, which plaintiff requested in Counts I and III of his complaint.[4] Rather, the remaining counts require inquiry into what process is required by statute and the Constitution. *See* Morales-Morales v. Ashcroft, 384 F.3d 418, 421 (7th Cir. 2004). We do not

---

422 (7th Cir. 2004) (noting that 1252(a)(2)(B) "does not clearly indicate that the exclusion from judicial review is so extreme as to purport to authorize the Attorney General to disregard both the Constitution and the statutory criteria set forth by Congress."); Kwai Fun Wong v. U.S., 373 F.3d 952, 963 (9th Cir. 2004); *but see* Leyva v. Ashcroft, 380 F.3d 303, 305-06 (7th Cir. 2004) (no jurisdiction to review due process challenge to removal order pursuant to section 1252(a)(B)(2)(i), but acknowledging that constitutional review remained an available, albeit "exceptional procedure.").

[4]We note, in passing, that there was some disconnect between this court's decision granting relief and the Court of Appeals opinion, as it has impacted this court's perception of the case. We did not mean to suggest that the court had jurisdiction to review a revocation of parole, although the appellate court's decision obviously concluded that we had so held. Rather, the issue, we believed, was whether or not the court had jurisdiction to review the exercise of that discretion when that exercise was used as a means to avoid review of the violation of a constitutional right. We thought yes; the Court of Appeals did not discuss the issue. We continue to adhere to the view that the petitioner is entitled to a due process removal hearing, although where and under what circumstances remain administrative decisions. We believe that Morales-Morales v. Ashcroft, *supra,* and fundamental due process principles so require. For example, if a bridge was unsafe if used by more than two-thirds the normal traffic, we have no doubt that the authorities have discretion to remedy the problem – and no doubt that they could not remedy it by requiring all African-Americans (one-third of the normal traffic) to use a bridge 20 miles downstream.

believe that, absent authorization, ignoring and bypassing these requirements qualify as discretionary decisions.[5] The government does not possess nonreviewable discretion to exceed its authority. Again, we express no opinion on the merits of the remaining counts in the complaint, we ask only whether the Seventh Circuit dismissed all counts in plaintiff's complaint, and conclude that it did not.

## CONCLUSION

Plaintiff's motion to set a date for the government to answer or plead to the remaining counts in the complaint is granted. A status hearing having been previously set for March 28, 2006, the government has until that date to respond to the remaining counts.

JAMES B. MORAN
Senior Judge, U. S. District Court

Feb. 28, 2006.

---

[5] Congress has provided that proceedings for determining admissibility or deportability "shall" be conducted. Section 1229(a)(1). This mandatory language contrasts permissive language found in statutes that authorize discretionary decisions. *See* Vasile 417 F.3d at 768 (noting that the language "to the satisfaction of the Attorney General" contained in INA § 208(a)(2)(D) was "permissive language" and "inherently discretionary."); *see also* El-Khader v. Monica, 366 F.3d 562, 567 (7th Cir. 2004) (finding that revoking a previously granted visa petition under 8 U.S.C. § 1155 is a discretionary decision in part because statutory language "may" and "at any time" "plainly signifies a discretionary decision.").