

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SABRI IBRAHIM SAMIRAH, | ) |
| Plaintiff, | ) |
| vs. | ) No. 03 C 1298 |
| ALBERTO GONZALES, Attorney General of the United States, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sabri Ibrahim Samirah was a resident alien who desired to leave the country to visit family in Jordan. In 2002 he requested and received from the former Immigration and Naturalization Service (INS) advance parole, which was permission to reenter the United States. At the time, plaintiff had applied for adjustment of status to that of a Legal Permanent Resident. On January 17, 2003, plaintiff was out of the country and the District Director of the Chicago INS, acting on behalf of the Attorney General, revoked the advance parole, citing information indicating that plaintiff was a security risk to the United States. Plaintiff received notice of the revocation on January 18, 2003, during his return trip to the United States, while he was at a pre-inspection station in Shannon, Ireland. Possessing neither advance parole nor a visa, plaintiff was forced to return to Jordan.

On February 20, 2003, plaintiff filed a nine-count complaint and sought, among other things, an injunction requiring the government to permit his return to the United States.[1] The

---

[1] As set forth in the complaint, plaintiff's nine claims were: "Violation of Regulations and Statute in parole revocation" (Count I); "Violation of Regulations and Statute in denying return to the United States" (Count II); "Violation of Procedural Due Process in parole revocation" (Count III); "Violation of Procedural Due Process in denial of return to the United States" (Count IV); "Violation of Equal Protection Prong of the

court granted plaintiff's motion for injunctive relief (*see* docket no. 15 (03C1298), March 25, 2003), but, after granting the government's motion to stay the ruling, the Seventh Circuit Court of Appeals reversed. *See* Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003). Plaintiff's motion for a rehearing *en banc* was denied, as was his subsequently filed petition for a writ of *certiorari*. On July 22, 2004, plaintiff filed a motion to set a date for the government to respond to the remaining counts in his complaint. The government opposed that motion, stating that no counts remained. On February 28, 2006, we granted the plaintiff's motion. *See* Samirah v. Gonzales, 2006 WL 516580 (N.D. Ill. 2006). The government now moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

The government raises two principal arguments in support of its motion. First, it contends that the Seventh Circuit dismissed the case in its entirety, which echoes its opposition to plaintiff's motion to set a date for a response. Second, the government argues that section 106(a) of the Real ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, enacted after the Seventh Circuit's opinion, amended 8 U.S.C. § 1252(b)(9) so that all issues relating to removal of an alien, including constitutional challenges, must be raised in a petition for review in the Seventh Circuit.[2] According to the government, section 1252, as amended by 101(f), applies to discretionary decisions that are not made in the context of a removal order. In response, plaintiff asserts that we have already concluded that the Seventh Circuit did not reach his constitutional and statutory claims. Plaintiff further argues that section 106(a) only applies

---

Fifth Amendment" (Count V); "Violation of the Requirements of the Administrative Procedure Act" (Count VI); "Mandamus" (Count VII); "Petition for Writ of Habeas Corpus" (Count VIII); and "Declaratory and Injunctive Relief" (Count IX).

[2] The Real ID Act retroactively applies to plaintiff's case, as the revocation of parole was issued before May 11, 2005, the date the Act was enacted. *See* 8 U.S.C. § 1252(a)(2)(D); Hamdan v. Gonzales, 425 F.3d 1051, 1057 (7th Cir. 2005).

to removal orders, and section 101(f) only impacts the discretionary decision to revoke his advance parole, which plaintiff is not challenging.

In ruling on the government's motion to dismiss, the court "accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor." McCullah v. Gadert, 344 F.3d 655, 657 (7th Cir. 2003); Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995).

The Seventh Circuit concluded that we lacked jurisdiction over plaintiff's petition for habeas relief and held that section 1252(a)(2)(B)(ii) "bars jurisdiction over of [sic] the rest of [plaintiff's] action," because that section "makes clear that one of the subjects beyond any statutory grant of jurisdiction, at least outside the context of a habeas proceeding, is review of the Attorney General's discretionary decision to revoke parole." Samirah, 335 F.3d at 552. The court then reversed, without remanding for additional proceedings. In our February 28, 2006, order, we observed that the Seventh Circuit reversed without expressly remanding for additional proceedings, but concluded that the "rest of Samirah's action" did not encompass plaintiff's constitutional and statutory claims, which the court only referenced in passing. Samirah, 2006 WL 516580, *2.

The government again depicts the Seventh Circuit's ruling as total and foreclosing future proceedings, but it offers little that we have not yet considered. As the Seventh Circuit held, we "lack[ ] jurisdiction to review, much less reverse, the revocation of [plaintiff's] parole" (Samirah, 335 F.3d at 549), and therefore cannot grant relief under Counts I and III, which assert statutory and constitutional violations "in Parole Revocation."[3] Further, plaintiff's

---

[3] The Seventh Circuit's attention to our focus on parole revocation is evident in its quotation of our conclusion that the government could not "short-circuit" plaintiff's rights "*by revoking his parole* and then treating him as if he had never been here at all." Samirah, 335 F.3d at 548 (emphasis added by the Seventh

petition for habeas relief (Count VIII) was dismissed because he was not in custody and we did not have jurisdiction over his putative custodian. In contrast, counts II, IV, V and VI focus on the government's alleged statutory and constitutional violations in denying plaintiff re-entry into the United States, and removing him without any hearing or related procedural protections. We thus concluded that the remaining counts relate to the government's non-discretionary duties rather than the discretionary (and non-reviewable) decision to revoke plaintiff's advance parole.

In the motion to dismiss, the government does argue that viability of any of plaintiff's claims depends on his ability to assert a legal basis to remain in the United States, and without advance parole or a visa he has no such legal basis and cannot claim any injury from being denied re-entry. We note that this analysis first appears, for the most part, in the government's reply brief,[4] but we address it nevertheless because it is consonant with the government's previously asserted position that there is no significant difference between the revocation of advance parole and the denial of re-entry and failure to provide a hearing.

Contrary to the government's position, there is a difference between a challenge to the actual decision to revoke parole and the process that led to that decision. The latter concerns non-discretionary questions that the jurisdiction stripping provisions of section 1252(a)(2)(B)(ii) do not reach. See Morales-Morales v. Ashcroft, 384 F.3d 418 (7th Cir. 2004) (holding that non-discretionary questions of statutory interpretation – here, the meaning of

---

Circuit).

[4] The government also uses its reply brief to incorporate, through a footnote, a motion to dismiss filed on March 12, 2003. This motion was fully briefed but we decline, at this time, to address any remaining issues. The government may re-file a motion to dismiss with respect to any issues raised in its initial motion that remain relevant.

"certain breaks in presence" from section 1229b(d)(2) – are within the court's jurisdiction).

The government attempts to distinguish Morales-Morales, claiming that the issue in that case was the statutory interpretation of an element of relief, rather than the exercise of discretion. *See* gov't reply at 6 n.3. In Morales-Morales, the petitioner's claim was narrow and turned on the meaning of a specific statutory language, while plaintiff alleges that the government ignored statutory and constitutional dictates that required a hearing and other procedural protections, such as being informed of the charges against him. Plaintiff's claims may be broader than those raised in Morales-Morales, but they still turn on statutory interpretation. In Count II, for example, plaintiff alleges that the government failed to comply with 8 C.F.R. §§ 245.2(a)(1), 1.1(q), and 253.(b)(1). Taken together, those sections provide that an arriving alien who has had his parole terminated or revoked, is still entitled to an exclusion proceeding. *See* Geach v. Chertoff, 444 F.3d 940, 945 (8th Cir. 2006). Plaintiff also seeks relief under the Fifth Amendment, and claims that he "had a liberty interest in being permitted to return to the United States" (cplt., ¶¶ 50, 56), and that procedural due process required a hearing, notice and opportunity to be heard (*id.*, ¶¶ 57, 62). *See* Hamdan, 425 F.3d at 1060 (citing Reno v. Flores, 507 U.S. 292, 306 (1993). ("The Fifth Amendment entitles aliens to due process in immigration proceedings.")[5]

The petitioner in Morales-Morales claimed that the Immigration Judge incorrectly interpreted a statutory provision, and plaintiff claims that the government erred when it

---

[5] With respect to plaintiff's constitutional claims, we lack jurisdiction if the claims lack merit (*see* Hamdan, 425 F.3d at 1061 (quoting Dave v. Ashcroft, 363 F.3d 649, 653 (7th Cir. 2004)), and procedural entitlements alone are not liberty interests. Cevilla v. Gonzales, 446 F.3d 658, 662 (7th Cir. 2006). However, since neither of the parties discuss this precise issue, and because there are alternate statutory grounds for jurisdiction, at this time we will not address our jurisdiction predicated on the due process claim.

ignored relevant statutory provisions (*i.e.*, interpreted them to be inapplicable). In both instances the challenge is directed at legal error and focuses on issues antecedent to the final decision. Plaintiff does not contest the discretionary decision to revoke parole; rather, he challenges the government's revocation of his advance parole and subsequent prevention of re-entry into the United States, under the correct interpretation of the hearing requirements set forth in the INA, and required by the Constitution. *See* Morales-Morales, 384 F.3d at 421.[6]

The government also argues that, to the extent that claims remain, the Real ID Act requires that they be heard by the Seventh Circuit. The government's position is subject to several flaws, the first being reliance on the Real ID Act's channeling of habeas review to the courts of appeal. After the Seventh Circuit's reversal, plaintiff may no longer seek relief by petitioning for habeas relief, and he may not invoke the court's jurisdiction under our authority to grant that relief. But plaintiff does not persist with his defunct habeas claim. Also significant to the applicability of the Real ID Act's jurisdiction stripping provisions is the nature of the Attorney General's decision to revoke parole and the context in which that decision was made.

Citing section 101(f) of the Real ID Act, the government argues that section 1252(a)(2)(B)(ii) applies even though the Attorney General's decision was not made in the context of a removal proceeding. By so arguing, the government concedes that the revocation of plaintiff's advance parole transpired outside of a removal proceeding. Section

---

[6] Moreover, to the extent that the government argues that plaintiff's current status prevents him from raising constitutional and statutory challenges, the question is not what rights he currently has, but what rights he should have been afforded when he had a pending application for adjustment of status to permanent resident alien and advance parole authorized by the INS. There is no debate that the government had the discretion to revoke his advance parole. The issue is what was constitutionally and statutorily required in order for it to make that decision.

1252(a)(2)(B)(ii) does indeed apply to decisions made outside of formal removal proceedings. The Seventh Circuit so held, and Congress so intended. *See* Samirah, 335 F.3d at 549; H.R. Rep. No. 109-13 at 170 ("Subsection 101(f) would amend subparagraph 242(a)(2)(B) of the INA by clarifying that the provision barring judicial review of denials of discretionary relief applies regardless of whether the discretionary judgment, decision, or action is made in removal proceedings."). However, section 1252(a)(2)(B)(ii) only precludes our jurisdiction over the Attorney General's discretionary decisions. *See* El-Khader v. Monica, 366 F.3d 562, 567 (7th Cir. 2004) (emphasis in original) (stating that the scope of section 1252(a)(2)(B)(ii) "extends beyond removal and deportation proceedings," and holding "that the judicial review of the revocation of a visa petition under 8 U.S.C. § 1155 is precluded, *so long as* that decision is discretionary in nature."). The Seventh Circuit made that clear, and the government echoes that conclusion in its motion to dismiss, when it states that "neither the Constitution nor the statute provide for judicial review or 'process' by which plaintiff may challenge this discretion determination" to revoke advance parole (gov't motion at 3). As explained above, the remaining claims involve non-discretionary decisions, and therefore section 1252(a)(2)(B)(ii) does not preclude our jurisdiction to address whether those decisions were legal. *See* Sissoko v. Rocha, 440 F.3d 1145, 1159, 1162-63 (9th Cir. 2006).

Further inquiry into our jurisdiction leads us to another provision added by the Real ID Act that consolidates review in the courts of appeals. Section1252(a)(2)(D) provides that no provision of the chapter "which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *See* Gattem v. Gonzales, 412 F.3d 758, 762-63 (7th Cir. 2005); Vasile v. Gonzales, 417 F.3d 766, 768 (7th Cir.

2005). Plaintiff contends that section 1252(a)(2)(D) does not channel his action to the Seventh Circuit because he was not subject to a final removal order. For support he cites <u>Hamdan v. Gonzales</u>, 425 F.3d 1051, 1057 (7th Cir. 2005), in which the Seventh Circuit stated that section 1252(a)(2)(D) "restored limited judicial review of constitutional claims and questions of law presented in petitions for review of final removal orders."

In <u>Rosales-Pineda v. Gonzales</u>, 452 F.3d 627, 629-630 (7th Cir. 2006), the Seventh Circuit described 1252(a)(2)(D) in broad terms, noting that it applies to deportation proceedings and not just removal orders. ("But under the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, 310-11 (2005) (codified at 8 U.S.C. § 1252(a)(2)(D)), this court has jurisdiction to review all constitutional claims and questions of law arising from deportation proceedings.") However, <u>Rosales-Pineda</u> and <u>Ramos v. Gonzales</u>, 414 F.3d 800 (7th Cir. 2005), the case the court cited, both involved petitions for relief from final orders of removal. *See also* <u>Hashish v. Gonzales</u>, 442 F.3d 572, 574 (7th Cir. 2006) ("We also may review constitutional questions and questions of law raised in a petition for review of a final removal order. See 8 U.S.C. § 1252(a)(2)(D).") Review of plaintiff's claims does not involve analysis of a discretionary decision or a final order of removal, two aspects of the immigration decision making process that Congress has insulated and subjected to a streamlined review process. *See* <u>Moallin v. Cangemi</u>, 427 F. Supp.2d 908, 920 (D. Minn. 2006) (reviewing petitioner's constitutional claims seeking release from custody, pending removal, "does not require the court to touch upon the removal decision in any way that offends either the express text or legislative history of the Act."); <u>Tejada v. Cabral</u>, 424 F. Supp. 2d 296, 298 (D. Mass. 2006) (Real ID Act "only deprived this Court of jurisdiction over petitions which challenge 'any final order of removal.' As noted above, Tejada challenges only his underlying state conviction, not the Department's order of

removal. This Court, therefore, properly has jurisdiction over Tejada's petition."); <u>Kaneth v. Ridge</u>, 2005 WL 1719217, *1 n.1 ( D. Minn. 2005); <u>Fordjour v. Ashcroft</u>, 2005 WL 200857 (E.D. Cal. 2005). Plaintiff's claims are independent of a final order of removal (because there is none) and relate to non-discretionary issues, and are thus properly before the court.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is denied.[7]

                                       JAMES B. MORAN
                                    Senior Judge, U. S. District Court

Aug. 30, 2006.

---

[7] The government earlier suggested that it appeal the conclusions in the February 28, 2006, order by seeking a writ of mandamus. We directed, instead, that it brief the motion to dismiss. We agree, however, that early review by the Court of Appeals may well be appropriate. Only the Court of Appeals can determine with certainty whether it intended to end the case or whether it intended only to end a portion of it. This court would be, in those circumstances, sympathetic to a section 1292(b) motion.