IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SABRI IBRAHIM SAMIRAH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 03 C 1298 |
| ) | |
| MICHAEL B. MUKASEY, Attorney ) | |
| General of the United States, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sabri Ibrahim Samirah, a native and citizen of Jordan, entered the United States in 1987 on a student visa. He overstayed his visa and fell out of legal status. He subsequently sought to adjust his status to that of legal permanent resident on three separate occasions. While his third adjustment application was pending he requested permission from the former Immigration and Naturalization Service (INS)[1] to leave the country to visit family in Jordan. The INS granted plaintiff advance parole, which in simple terms means that the trip would not adversely affect his adjustment application and that when the trip was concluded he would be allowed to reenter the United States and continue with his application.

On January 17, 2003, while plaintiff was out of the country, the Attorney General revoked the advance parole because the INS had received information that plaintiff was a

---

[1] On March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The transition is not relevant to this litigation, so for ease of reading we will refer to the INS throughout this opinion.

security risk to the United States.[2] Plaintiff, who did not know that his parole had been revoked, attempted to return to the United States on January 18, 2003. His return trip included a layover in Shannon, Ireland, where the airport houses a United States immigration pre-inspection station. U. S. Immigration officials in Shannon notified plaintiff that the Attorney General had revoked his advance parole and refused to let him board the airplane to the United States because he did not possess a valid visa. With no way to enter the United States and rejoin his family, plaintiff instead returned to Jordan.

On February 20, 2003. plaintiff filed a nine-count complaint seeking habeas relief as well as declaratory and injunctive relief. We issued an injunction and ordered the government to reinstate plaintiff's advance parole. We reasoned that "the government cannot short-circuit the rights of an alien who has long lived in the United States by revoking his parole and then treating him as if he had never been here at all." The government appealed and the Seventh Circuit reversed our decision. Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003). The Court of Appeals found that plaintiff could not bring his action under 28 U.S.C. § 2241 because he was not in custody, *id.* at 551, and that this court had no jurisdiction to review the Attorney General's discretionary decision to revoke parole, *id.* at 548-49.

The government subsequently moved to dismiss the complaint in this court, arguing that the Seventh Circuit dismissed plaintiff's case in its entirety and that, in any event, all issues relating to removal of an alien, including constitutional challenges, must be raised in a petition for review in the Seventh Circuit. We rejected both arguments. As relevant here, we held that any discussion about the plaintiff's constitutional arguments or his request for relief

---

[2] The advance parole was actually revoked by the District Director of the Chicago INS, but because he did so using power delegated to him by the Attorney General, we refer to the Attorney General throughout.

under the APA or through mandamus was conspicuously absent in the Court of Appeals decision, and thus the Court of Appeals had not addressed those claims. We did, however, grant the government permission to seek an interlocutory appeal because "[o]nly the Court of Appeals can determine with certainty whether it intended to end the case or whether it intended only to end a portion of it." The Court of Appeals declined to accept the government's appeal. Both parties now move for summary judgment in this court. The motions are fully briefed and ready for disposition.

## DISCUSSION

As an initial matter, the government renews its argument that the decision of the Seventh Circuit dismissed plaintiff's case in its entirety. We disagree. As we have previously stated, our original decision granting relief did not mean to suggest that the court had jurisdiction to review a revocation of parole (*see* Order Granting Pl.'s Mot. to Set Date, Feb. 28, 2006, fn4). Instead, it was our belief that the issue was whether the court had jurisdiction to review the exercise of that discretion when that exercise was used as a means to avoid review of a violation of a constitutional right. We still adhere to the view that the court possesses such jurisdiction. For example, although the decision to adjust an alien's status is committed to the discretion of the Attorney General, we have no doubt that he may not, as a matter of policy, refuse to adjust the status of only female aliens. The decision of the Court of Appeals did not address this issue, and so we now turn to plaintiff's surviving claims.

Due Process

Plaintiff alleges that the Attorney General denied him due process by removing him without providing him with a removal hearing. His argument can be summarized as follows: He was lawfully admitted to the United States as a non-immigrant student. As a lawfully

admitted alien, even one who has fallen out of legal status, he can only be removed from the country after a removal hearing before an immigration judge. *See* 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."); §1229a(a)(3) ("Unless otherwise specified in this Act, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."). By revoking plaintiff's advance parole the Attorney General in effect removed the plaintiff from the United States without the benefit of removal proceedings.[3] Plaintiff asks us to use our power under the Mandamus Act and the Administrative Procedure Act to order the Attorney General to provide the required hearing.

It is a fundamental legal principle that the government may not deprive individuals of a liberty or property interest without due process of law. For example, the state has the power to detain "people who are unable to control their behavior and thereby pose a danger to the public health and safety." Kansas v. Hendricks, 521 U.S. 346, 357 (1997). But the state may not detain such individuals at-will. Because individuals have a liberty interest in remaining free from physical restraint, the state must provide a hearing before subjecting an individual to involuntary commitment. Hendricks, 521 U.S. at 357 (explaining that involuntary commitment must take place pursuant to proper procedures and evidentiary standards). *See also* Foucha v. Louisiana, 504 U.S. 71, 81-82 (1992) (invalidating a statute under which "the State need prove nothing to justify continued detention"). Similarly, the Supreme Court has recognized that deportation involves a loss of liberty and thus the government cannot

---

[3] According to the record, the Attorney General has never commenced formal removal proceedings against plaintiff.

permanently remove aliens from the United States without a removal hearing. Reno v. Flores, 507 U.S. 292, 306 (1993). *See also* Mathews v. Diaz, 426 U.S. 67, 77 (1976); Wong Yang Sung v. McGraff, 339 U.S. 33 ("It was under the compulsion of the Constitution that this Court long ago held that an antecedent deportation statute must provide a hearing at least for aliens who had not entered clandestinely and who had been here some time even if illegally.") (citing The Japanese Immigrant Case, 189 U.S. 86, 100-101 (1903)); Bridges v. Wixon, 326 U.S. 135, 154 (1945) (stating that deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom . . . . Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."). We hold that this is true whether the government physically removes the individual from United States soil or promises him that he can leave temporarily and return, but the government subsequently bars his reentry.

The government argues that there can be no violation of plaintiff's due process rights because what he ultimately seeks is an opportunity to adjust his status, which is a form of discretionary relief. We recognize that in his application to adjust his status plaintiff has admitted that he is removable,[4] and that there is no liberty or property interest in discretionary relief. Hamdan v. Gonzales, 425 F.3d 1051, 1060-61 (7th Cir. 2005). But in this instance, plaintiff is not claiming that his due process rights were violated because he did not receive discretionary relief. Instead, he claims his due process rights were violated because he was denied a removal hearing before an immigration judge and the opportunity to even ask for such relief. The Seventh Circuit has recognized that there is "a significant difference between

---

[4] *See* Def.'s Statement of Undisputed Material Facts Ex. C Question 10 (Question: "I am now in lawful immigration status; and I have always maintained a lawful immigration status while in the United States after November 5, 1986." Answer: "No.").

saying one has a right to *obtain* discretionary relief and saying that one has a right to *seek* discretionary relief." Johnson v. Gonzales, 478 F.3d 795, 798 (7th Cir. 2007) (citing United States v. Roque-Espinoza, 338 F.3d 724, 729 (7th Cir. 2003)). Although not fully resolved, the Seventh Circuit has recognized that the latter might state a constitutional claim. *Id.* We agree. If aliens are statutorily entitled to a removal hearing (*see* 8 U.S.C. § 1229a), and due process requires that the hearing provides a meaningful opportunity to be heard and present evidence (*see, e.g.*, Bosede v. Mukasey, No. 06-1625, 2008 WL 114892 at *4 (7th Cir. Jan. 14, 2008)), then, surely, when the Attorney General altogether fails to provide an alien with a removal hearing, there must be a violation of due process. We make no determination as to whether plaintiff is entitled to adjustment of status – to do so would be beyond our jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(B); *see also* Skorusa v. Gonzales, 482 F.3d 939, 942 (7th Cir. 2007). We hold only that a hearing must be provided.

Mandamus Relief

The Mandamus Act provides district courts the power to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. We may order mandamus relief when (1) the plaintiff has a clear right to the relief sought; (2) the defendant has a duty to do the act in question; and (3) no other adequate remedy is available. Iddir v. INS, 301 F.3d 492, 499 (7th Cir. 2002).

Defendants argue that plaintiff has no clear right to have his admissibility determined by a removal hearing. But the government incorrectly frames the question. Before plaintiff applied for advance parole and left the United States, he had an undisputed right to have his removability determined in a removal hearing before an immigration judge. The language of the statute is mandatory in this respect. *See* Iddir, 301 F.3d at 499 ("The term 'shall' denotes

a clear directive, a command, as opposed to the terms 'may' or 'in his discretion.'"). We cannot agree that plaintiff's trip to Jordan extinguished this right because he made that trip after the Attorney General promised him that he would be allowed to return. Thus, we find that plaintiff is entitled to a removal hearing in front of an immigration judge before the government orders him removed.

For the same reasons, we hold that the Attorney General has a duty to provide the plaintiff a removal hearing. We have held throughout the proceedings in this case, and we reiterate now, that the government cannot bypass the mandatory step of a removal hearing by granting plaintiff advance parole, revoking that parole while the plaintiff is outside of the United States, and then refusing to allow him to return to the United States. The government argues that we are ordering the Attorney General to commence removal proceedings and that we have no power to do so because that decision is committed to the discretion of the Attorney General. *See* 8 U.S.C. § 1252(g). We agree that we cannot order the Attorney General to commence removal proceedings against plaintiff, but that is not what this order accomplishes. We simply hold that the Attorney General may not bar the plaintiff from returning to the United States without providing a hearing. Whether the Attorney General decides to commence removal proceedings or to let plaintiff return to the United States to pursue his application to adjust his status is a matter for the Attorney General's discretion.

We pause to note that any other outcome would render all grants of advance parole meaningless. If the revocation of a grant of advance parole extinguished an alien's right to a removal hearing, the government could save the trouble of holding a removal hearing any time an alien requested advance parole by simply granting the request and then revoking advance

parole as soon as the alien left the country. This new method of removing aliens with advance parole would bypass the congressionally mandated removal procedures found in the INA.[5]

In sum, we hold that the government has a non-discretionary duty to provide plaintiff a removal hearing before removing him from the country, whether that removal is accomplished by normal procedures or by barring his travel to the United States once his advance parole was revoked. Plaintiff has a clear right to a removal hearing. Congress has mandated that the Attorney General provide such a hearing, and because the statute is specific as to the type of hearing required there is no other adequate remedy and mandamus relief is appropriate.

## The APA

The government also argues that plaintiff's claim for relief under the APA fails because the APA does not apply to aliens not present in the United States. We disagree for the same reasons we outlined above. As we explained, plaintiff's statutory right to a removal hearing was not extinguished when he left the United States under a grant of advance parole. Further, we reject the argument that the INA preempts the APA in this situation. Section 1252 of Title 8 governs judicial review of removal orders and thus preempts the APA in that regard. But in this case we are not reviewing an order of removal. Instead, we are reviewing the government's failure to provide a removal hearing. No section of the INA governs judicial review of the government's failure to provide a removal hearing. On the other hand, the APA instructs reviewing courts to "compel agency action unlawfully withheld or unreasonably

---

[5] We do not mean to suggest that the Attorney General acted deliberately in this case, rather we simply note the problem with the government's argument.

delayed." 5 U.S.C. § 706(1). Thus, the APA empowers this court to correct the government's error.

## CONCLUSION

In light of our finding that the Attorney General failed to provide plaintiff with his statutorily guaranteed removal hearing, plaintiff's motion for summary judgment is granted. The government's motion for summary judgment is denied. The Attorney General is directed to allow plaintiff to return to the United States, or to wherever the removal hearing is to proceed, within 60 days of the date of this order. If the Attorney General initiates removal proceedings within that time, this order will be stayed pending the outcome of those proceedings. We make no ruling as to where any removal proceedings should take place, or in what format they should occur, so long as the proceedings comport with the applicable statutes and regulations.

JAMES B. MORAN
Senior Judge, U. S. District Court

Feb. 13, 2008.