IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SABRI I. SAMIRAH, )
)
       Plaintiff, )
) No. 03 CV 1298
v. )
) Hon. Charles R. Norgle
LORETTA E. LYNCH, Attorney General )
of the United States, et al., )
)
       Defendants. )

## OPINION AND ORDER

Before the Court is Plaintiff Sabri I. Samirah, Ph.D.'s ("Plaintiff") motion for attorney's fees in the amount of $431,501.26, and costs in the amount of $10,284.71, pursuant to the Equal Access to Justice Act, ("EAJA") 28 U.S.C. § 2412(d); 5 U.S.C. § 504, *et seq.* For the following reasons, Plaintiff's motion is granted in part, and denied in part. Plaintiff is awarded $135,605 in fees, and $805.07 in costs, for a total award of $136,410.07.

## I. BACKGROUND[1]

Throughout the litigation, Plaintiff had a team of non-appointed attorneys working pro bono on his case, led by Attorney Mark A. Flessner ("Flessner"), a partner at Holland & Knight LLP, and Attorney Charles Roth ("Roth"), Director of Litigation for the National Immigrant Justice Center. Plaintiff now seeks reimbursement for his attorneys' fees and costs under the EAJA. According to counsel for Plaintiff, he intends to donate any fees awarded in the instant petition to the National Immigrant Justice Center.

On March 26, 2015, the Court entered an Order finding that Plaintiff was the prevailing party and that the government's position in this protracted immigration litigation was not

---

[1] The Court is familiar with the underlying facts in this litigation, a detailed account of which can be found in the Court's March 26, 2015 Order.

substantially justified. Accordingly, the Court found that Plaintiff is entitled to attorneys' fees under the EAJA. Subsequently, the parties provided supplemental briefs disputing the exact amounts of fees and costs requested by Plaintiff. The motion is now fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

The Court has wide discretion when assessing attorneys' fees; nonetheless, it "'must apply the correct standard.'" Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014) (quoting Fox v. Vice, 131 S. Ct. 2205, 2216 (2011)). An attorney's fee award must be reasonable; to determine the award, the Court begins by calculating the lodestar, i.e., the number of hours reasonably expended on the litigation multiplied by an attorney's reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Montanez, 755 F.3d at 553; Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 856 (7th Cir. 2009). The lodestar is a presumptively reasonable fee, but the Court "may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." Schlacher, 574 F.3d at 856-57 (citations omitted).

### B. Objections to Hourly Rates

First, the parties dispute the proper hourly rate of attorneys' fees. "[T]he EAJA caps hourly rates at $125 'unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee' . . . ." Muhur v. Ashcroft, 382 F.3d 653, 656 (7th Cir. 2004) (quoting 28 U.S.C. § 2412(d)(2)(A)). Plaintiff seeks a cost of living increase for the rates of all of the attorneys who worked on his case, as well as enhanced fees for Flessner and Roth.

### *1. Cost of Living Increase*

With respect to a higher fee due to increases in the cost of living, "the [Consumer Price Index] suffices as proof of an increase in the cost of living, [however,] claimants must still produce satisfactory evidence that the increase in the cost of living 'justifies' the rate requested." Sprinkle v. Colvin, 777 F.3d 421, 428 (7th Cir. 2015) (quoting 28 U.S.C. § 2412(d)(2)(A)(ii)). "So claimants must produce evidence that the rate they request is in line with those prevailing in the community for similar services by lawyers of comparable skill and experience." Id. The government does not contest Plaintiff's calculations using the Consumer Price Index. To "justify" the increase, Plaintiff has produced affidavits from Flessner and Roth regarding their fees. Although Flessner does not directly address the prevailing market rate for services of lawyers with similar skill and experience, he does provide the billing rates that were used for his services by SNR Denton, his former law firm, and Holland & Knight LLP, his current law firm—both of which are located in Chicago. Roth goes further and produces the billing rates for an attorney of similar skill and experience at a law firm in the Chicago market. The Court finds that these affidavits, along with the affidavit of Catherine Matthews who calculated the rates using the Consumer Price Index, justify a higher rate due to the increase in the cost of living. See Pl.'s Mot. and Mem. for Attorney's Fees Under Equal Access to Justice Act Ex. B. The higher rates to account for the cost of living increases for the relevant years will be applied accordingly.

### *2. Enhanced Fees*

As to Flessner and Roth, Plaintiff argues that he should be awarded enhanced fees for their services based on "the limited availability of qualified attorneys," 28 U.S.C. § 2412(d)(2)(A), and because Flessner and Roth had "some distinctive knowledge or specialized

skill needful for the litigation in question," Pierce v. Underwood, 487 U.S. 552, 572 (1988). To qualify for enhanced fees, a lawyer must have more than "an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." Id. For example, "an identifiable practice specialty such as patent law, or knowledge of foreign law or language" could be considered specialized skill leading to enhanced fees. Id. While immigration attorneys may not be "ipso facto entitled to fees above the statutory ceiling," factors that can lead to enhanced fees include "immigration lawyers who bring relevant expertise to a case, such as knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law, in which such expertise is needed to give the alien a fair shot at prevailing." Muhur, 382 F.3d at 656.

Here, Plaintiff argues that Roth is a leading litigator and expert in the field of immigration generally, and that he has previous experience in issues relevant to this case such as federal court jurisdiction in immigration cases, the constitutional rights of noncitizens, advance parole, and removal procedures. See Pl.'s Mot. and Mem. for Attorney's Fees Under Equal Access to Justice Act Ex. D, ¶¶ 9-12. While Roth specializes in immigration law, in his affidavit he falls short of claiming expertise in the specific areas at issue in this case. Rather, Roth merely describes his general experience in a number of different areas of immigration law. And while this case was on appeal for the second time, the Seventh Circuit acknowledged the general complexity of immigration law, but noted that "[t]he issues presented by this appeal have not been briefed and argued as carefully as we would like"—an admonishment which belies Roth's claimed expertise in the specific topics at issue in the case. Samirah v. Holder, 627 F.3d 652, 654 (7th Cir. 2010) ("Samirah II"). In any event, as the government suggests, advanced parole is a relatively common procedure, and the Seventh Circuit specifically found that the relevant statute and application thereof were unambiguous, calling contrary interpretations "startling",

"desperate" and "absurd." Id. at 658-661. The Seventh Circuit's findings suggest that this case did not involve "esoteric nooks and crannies of immigration law" which would lend itself to enhanced fees. Muhur, 382 F.3d at 656. Unlike asylum cases where particular knowledge of languages or cultures could be crucial to a litigant, the instant case was resolved by statutory interpretation of advance parole. Statutory construction does not require the services of an expert in immigration law. In sum, Plaintiff fails to show that he is entitled to an enhanced hourly rate for Roth's services.

With respect to Flessner, Plaintiff argues that enhanced fees above the statutory cap are appropriate because, as a former federal prosecutor in the Northern District of Illinois and partner at major law firms, Flessner has extensive knowledge and experience in litigating before the district court and before the Seventh Circuit. See Pl.'s Mot. and Mem. for Attorney's Fees Under Equal Access to Justice Act Ex. C, ¶ 2. While Flessner undoubtedly is an experienced attorney, "an extraordinary level of the general lawyerly knowledge and ability useful in all litigation," such as that suggested here, is insufficient to support a claim for enhanced fees. Pierce, 487 U.S. at 572.

Plaintiff also argues that Flessner has unique experience with national security issues, although that claim is not supported by his affidavit. Roth too claims experience in national security matters. However, neither Flessner nor Roth explain the area of national security law in which they purport to have specialized experience, or how such experience would be relevant to this case. Although the government made vague allegations that Plaintiff's advance parole was revoked because he was determined to be a national security risk, the issue was never developed and the government never provided further explanation for the allegation. Indeed, the Seventh Circuit quickly and emphatically rejected any national security implication by calling it a

"groundless suspicion or, for that matter, no suspicion." Samirah II, 627 F.3d at 662. Although experienced attorneys generally, the affidavits of Flessner and Roth fail to articulate or show that they possessed unique skills crucial to the outcome of this particular case. Accordingly, the Court finds that Plaintiff is not entitled to enhanced fees beyond a cost of living increase for the services of Flessner or Roth.

**C. Objections to Fees**

Next, the government raises numerous challenges to the amount of fees requested.

*1. Attorneys' Fees Incurred During the Litigation of Samirah I*

First, the government argues that Plaintiff should not recover for any fees expended during its unsuccessful litigation of "Samirah I." See Samirah v. O'Connell, 335 F.3d 545, 552 (7th Cir. 2003) ("Samirah I"). During the first stage of this litigation, Plaintiff pursued and was granted habeas relief by the district court—relief which was reversed by the Seventh Circuit in Samirah I, when the court found that the district court lacked jurisdiction over Plaintiff's action. See id. ("The district court lacked jurisdiction over Samirah's § 2241 petition because he was not in custody and because it lacked jurisdiction over his putative custodian. [Title 8] Section 1252(a)(2)(B)(ii) bars jurisdiction over the rest of Samirah's action."). Plaintiff filed a petition for writ of certiorari to the United States Supreme Court, challenging the Seventh Circuit's decision, which was denied in 2004. It was not until after the denial of Plaintiff's certiorari petition that he returned to the district court to pursue a new avenue of claims, which were ultimately successful and affirmed on appeal in Samirah II.

Plaintiff argues that fees expended during the Samirah I litigation should be included because it was merely one phase of the whole litigation which led to his success in Samirah II. The Court disagrees. One consideration within the Court's wide discretion in determining

reasonable fees is the "results obtained." Hensley, 461 U.S. at 434; see also Atkins v. Apfel, 154 F.3d 986, 990 (9th Cir. 1998) ("The district court should 'make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.'" (quoting Hensley, 461 U.S. at 437)).

Here, Plaintiff was completely unsuccessful in all relief sought during the review of Samirah I, including his pursuit of review before the United States Supreme Court. Plaintiff did not begin to achieve success until he returned to the district court with new arguments following the denial of his certiorari petition. In Samirah II, the Seventh Circuit noted that "the issues presented to us have changed, requiring us to conduct a fresh analysis." Samirah II, 627 F.3d at 654. Accordingly, the Court excludes all fees for work done during the litigation of Samirah I.

### 2. Objections to Attorneys' Fees that Are Excessive, Redundant, or Unnecessary

The government also asks the Court to strike fees for certain tasks that were excessive, redundant, or unnecessary. "The district court also should exclude from this initial fee calculation hours that were not reasonably expended." Hensley, 461 U.S. at 434 (internal quotation marks and citations omitted). "Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." Id.

Specifically, the government moves to strike: (1) fees incurred for multiple attorneys to attend the same meeting, allowing only the fees for the attorney present who billed at the highest rate; (2) fees for work that should not have been done or billed for by an attorney; (3) fees for time spent by attorneys new to the case to review pleadings and motions; and (4) other charges that the government deems unnecessary. The unnecessary charges include, *inter alia*, a meeting

7

attended which was not directly related to the instant litigation; an hour and a half lunch with Magistrate Judge Cox, which Plaintiff admits was billed in error; Freedom of Information Act requests outside of this Court's jurisdiction; and time spent by Roth restructuring his billing records because he does not keep contemporaneous records of his time, which Plaintiff now concedes is unrecoverable. The Court has reviewed the arguments of the parties and finds that the billing entries described above and in the government's brief do not constitute reasonable fees because they are excessive, redundant, or otherwise unnecessary. Accordingly, these fees are stricken.

### *3. Objections to Attorneys' Fees Billed in Blocks*

Next, the government objects to "block billing" entries from Plaintiff's attorneys. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." Farfaras v. Citizens Bank and Trust of Chi., 433 F.3d 558, 569 (7th Cir. 2006). However, block billing is impermissible when it becomes impossible to tell how much time was spent on specific tasks. See Nat'l Rifle Ass'n of Am. v. Vill. of Oak Park, 871 F. Supp. 2d 781, 791 (N.D. Ill. 2012). Here, the Court cannot discern the specific tasks performed in Plaintiff's block billing entries. Thus, the Court, in its discretion, excludes the fees that Plaintiff submitted in block format.

### *4. Objections to Fees for Paralegals*

Finally, the government asks the Court to strike all fees billed for by paralegals. The government argues that the paralegals' fees should be excluded from the award because Plaintiff billed for the paralegals' work at exorbitant rates. Notably, one paralegal billed at a rate of $245 an hour, well above the EAJA's $125 statutory cap on the hourly rate for attorneys, even with the cost of living increase. In addition, much of the work done by the paralegals was in relation to

Samirah I, which the Court finds is unrecoverable. Plaintiff also fails to provide any evidence of the market rates for the services of the paralegals.

Plaintiff tacitly concedes that not all of the fees billed for by the paralegals are recoverable when he states merely that "[t]here is legitimate time spent on attorney-like work that should be included in the Court's award of fees." Pet.'s Supplemental Reply in Supp. of the Pet. for Attorney's Fees Under Equal Access to Justice Act 9. While there may be legitimate work done by the paralegals that would be recoverable, it is Plaintiff's burden, not the Court's, to show that the paralegals' fees were reasonably expended and at a reasonable rate. See Hensley, 461 U.S. at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). The Court's goal in a fee shifting petition "is to do rough justice, not to achieve auditing perfection." Fox, 131 S. Ct. at 2210. Because Plaintiff failed, among other things, to justify a reasonable hourly rate for the paralegals' fees, the Court strikes them from the award.

Once the excluded fees are subtracted and the appropriate hourly rates are applied, it leaves Plaintiff with a total fee award of $135,605.00. The Court finds that this lodestar amount in reasonable.

**D. Objections to Costs**

As to costs, the government argues that only $799.39 of the $10,279.03 of costs incurred by SNR Denton is recoverable. In particular, the government objects to $6,855.60 in costs which was incurred for copy and other services related to Plaintiff's unsuccessful petition for writ of certiorari before the United States Supreme Court. As discussed above, these costs are unrecoverable because Plaintiff's arguments in the Samirah I litigation were unsuccessful. Likewise, $924 in legal research costs for research performed during the Samirah I litigation is

unrecoverable. And lastly, a $1700.04 block bill for Westlaw research, presumably incurred throughout the entire case, is stricken because the Court is unable to tell whether the research was performed during Samirah I or Samirah II. According to Flessner's affidavit, there is an additional $5.68 in costs incurred by Holland & Knight LLP. The government does not object to that amount and the Court finds that it is reasonable. Accordingly, Plaintiff is entitled to recover a total of $805.07 in costs.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted in part, and denied in part. Plaintiff is awarded $135,605 in fees, and $805.07 in costs, for a total award of $136,410.07.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: June 1, 2015